UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**MARIAH DANIEL WILLIAMS, ET AL.**             **CIVIL ACTION**

**VERSUS**                                     **NO. 15-64**

**MARLIN N. GUSMAN**                           **SECTION I**

## ORDER AND REASONS

The Court has pending before it a motion[1] for partial summary judgment filed by defendant, Sheriff Marlin N. Gusman ("the Sheriff"). Plaintiffs oppose the motion.[2] For the following reasons, the motion is **GRANTED**.

## BACKGROUND

This case arises out of the death of Willie Rhodes Lee ("Mr. Lee"), an inmate at Orleans Parish Prison ("OPP").[3] According to plaintiffs, Mr. Lee was attacked by another OPP inmate on March 23, 2014.[4] After the attack, he allegedly complained to OPP deputies about having difficulty breathing and his history of heart problems.[5] His requests were allegedly ignored for forty minutes; medical care was delayed, and Mr. Lee died later that night.[6]

Plaintiffs, Mr. Lee's mother and daughter,[7] filed this lawsuit against the Sheriff. No other defendants are named in the complaint. Plaintiffs bring claims against the Sheriff "in his individual

---

[1] R. Doc. No. 18.
[2] R. Doc. No. 25.
[3] Defendant's motion for partial summary judgment does not turn on the precise circumstances of Mr. Lee's death; for the purposes of this motion, the Court will describe plaintiffs' allegations in the light most favorable to plaintiffs.
[4] R. Doc. No. 1, ¶ 5; R. Doc. No. 25-8, ¶ 1.
[5] R. Doc. No. 1, ¶ 6; R. Doc. No. 25-8, ¶ 4.
[6] R. Doc. No. 1, ¶ 7; R. Doc. No. 25-8, ¶¶ 4-5.
[7] R. Doc. No. 1, ¶ 2.

capacity and in his official capacity" pursuant to 42 U.S.C. § 1983.[8] They allege that the Sheriff deprived Mr. Lee of various constitutional rights, including the right to medical care, and "established, condoned, ratified and encouraged customs, policies, patterns, and practices at the Orleans Parish Prison which directly and proximately caused the deprivation of [Mr. Lee's] civil and constitutional rights."[9] Plaintiffs also allege state-law negligence claims against the Sheriff.[10] They request compensatory and punitive damages.[11] The Sheriff moves for partial summary judgment "seeking dismissal of only the federal claims against him."[12]

## STANDARD OF LAW

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine issue of

---

[8] R. Doc. No. 1, ¶ 3; *see also* R. Doc. No. 1, ¶¶ 11, 14.
[9] R. Doc. No. 1, ¶¶ 11, 14.
[10] R. Doc. No. 1, ¶¶ 18-20.
[11] R. Doc. No. 1, at 6-7.
[12] R. Doc. No. 18-1, at 1.

material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999). "Finally, and especially relevant to this case, on a motion for summary judgment, the evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial." *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012); *see also* Fed. R. Civ. P. 56(c), (e).

## ANALYSIS

As explained above, the Sheriff's motion addresses only plaintiffs' federal claims. Plaintiffs contend that Mr. Lee was denied his constitutional right to adequate medical care, and they pursue recovery pursuant to 42 U.S.C. § 1983 against the Sheriff in both his official and individual capacities.[13] Plaintiffs' briefing is long on hyperbole but short on careful articulation of their theories of recovery against the Sheriff in either capacity.[14] They generally contend that unconstitutional deprivation of adequate medical care "must be viewed as the accepted custom of the Sheriff's

---

[13] R. Doc. No. 1, ¶¶ 11, 14.
[14] R. Doc. No. 25, at 1 ("Perhaps more so than any other governmental entity in the history of this country, the Orleans Parish Sheriff's Office ('OPSO') has a history of violating citizens' constitutional rights.").

3

Office."[15]

With respect to plaintiffs' official-capacity claim, a § 1983 claim against a Louisiana sheriff in his official capacity "is 'in essence' a suit against a municipality." *See Brown v. Strain*, 663 F.3d 245, 251 (5th Cir. 2011) (citing *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005)); *see also Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999) ("Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent."). "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

A plaintiff may establish the requisite official policy by proving "a persistent, widespread practice of [government] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* (quotation marks and alterations omitted). "Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy as required for municipal section 1983 liability." *Id.* at 581 (quotation marks omitted). "A pattern requires similarity and specificity; 'prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) (quoting *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)). "A pattern also requires 'sufficiently numerous prior incidents,'

---

[15]R. Doc. No. 25, at 1-3.

as opposed to 'isolated instances.'" *Id.* (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)).[16]

With respect to the § 1983 claim against the Sheriff in his individual capacity, it is well-settled that "[s]upervisory officials cannot be held liable under section 1983 for the actions of subordinates . . . on any theory of vicarious or *respondeat superior* liability." *McCully*, 406 F.3d at 381. Plaintiffs do not suggest that the Sheriff personally delayed Mr. Lee's medical care on March 23, 2014, or otherwise directly played a direct role in Mr. Lee's death.[17] However, "[s]upervisory liability may additionally exist 'without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.'" *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 289 (5th Cir. 2002) (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)) (applying identical definition of "custom").[18]

Plaintiffs concede, as they must in light of the governing law, that it is their burden to prove a pattern of constitutional violations at OPP similar to the alleged deprivation of medical care which resulted in Mr. Lee's death.[19] In opposition to the Sheriff's motion, plaintiffs submit (1) two letters

---

[16]Although they do not assert it in opposition to summary judgment, in their complaint plaintiffs allege inadequate training. *See* R. Doc. No. 1, ¶ 15. "The standard applicable to a failure-to-train claim is the same as the standard for municipal liability." *Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010).

[17]In his motion, the Sheriff asserts that plaintiffs "do not contend that Defendant Sheriff Gusman was personally involved in any interaction with the Plaintiff or in any of the events prior to Plaintiff's death." R. Doc. No. 18-1, at 1. In opposition, plaintiffs do not refute this point, and the Court's own review of the complaint does not reveal such an allegation.

[18]To the extent that plaintiffs assert an individual-capacity claim based on the Sheriff's failure to train or supervise employees at OPP, such a claim also generally requires plaintiffs to prove, among other things, a pattern of similar violations or incidents to establish deliberate indifference on the part of the Sheriff. *See McCully*, 406 F.3d at 382-83.

[19]R. Doc. No. 25, at 4 ("Plaintiffs therefore need to prove a pattern of the OPSO denying inmates access to appropriate medical care."); R. Doc. No. 18-1, at 3 ("In order for Plaintiffs to prevail

from the U.S. Department of Justice ("DOJ") to Sheriff Gusman, and (2) three reports prepared by the Monitor in connection with the Consent Judgment applicable to OPP. *See Jones v. Gusman*, 296 F.R.D. 416 (E.D. La. 2013) (order and reasons approving Consent Judgment). Because this evidence is inadmissible, generic, and insufficient in light of the governing law, the Sheriff's motion must be granted.

**B.     DOJ Letters**

In the first DOJ letter, dated September 11, 2009, DOJ asserted "Our investigation revealed that medical care provided at OPP meets constitutionally required standards of medical care in many areas; however, we found specific deficiencies in OPP's medication management."[20] In the second letter, dated April 23, 2012, DOJ asserted "OPP is deliberately indifferent to prisoners with serious medical and mental health needs. . . . Prisoners with physical illness, either emergent or chronic, experience unreasonable barriers in accessing care."[21] To the extent that it offers details, the second letter described "OPP's broken sick call process."[22]

Plaintiffs offer these letters for the truth of the matters asserted therein, but they have not articulated how the letters themselves would be admissible at trial. As the Sheriff points out, plaintiffs have not filed a witness list at all,[23] let alone designated a witness from DOJ who could

---

on their federal claims, the Plaintiffs must be able to prove a pattern sufficient to have illustrated some action which was, in effect, a policy."). The Court assumes *arguendo* that plaintiffs have identified with sufficient specificity the supposed policy. *See Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) ("It follows that each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff . . . .").

[20]R. Doc. No. 25-1, at 19.
[21]R. Doc. No. 25-2, at 3.
[22]R. Doc. No. 25-2, at 16.
[23]The Court notes that the parties jointly requested that the submission date of this motion be continued pending settlement negotiations, R. Doc. No. 23, but that settlement negotiations were so protracted that the U.S. Magistrate Judge was forced to schedule a second settlement conference. *See* R. Doc. No. 26 ("Despite the assurances of counsel that settlement consideration

testify regarding the contents of the letters and whatever facts support the conclusions asserted therein. Accordingly, plaintiffs have not proffered "competent and admissible evidence" to satisfy their burden on this motion for partial summary judgment. *Bellard*, 675 F.3d at 460.

Furthermore, the DOJ letters do not describe a single incident at all, let alone a pattern of incidents resembling Mr. Lee's death. The first letter observes deficiencies only with respect to medication management, which is not similar to the underlying incident in this case.[24] The second letter focuses on sick call procedures, which likewise are not implicated in this case.[25] In short, plaintiffs do not explain how these DOJ letters or their contents would be presented in admissible form at trial, or how the contents of the letters could generate a triable issue of fact regarding the requisite pattern of constitutional violations at OPP similar to the alleged violation of Mr. Lee's right to medical care.

C.    **Monitor's Reports**

OPP is subject to a Consent Judgment entered by this Court to address unconstitutional conditions, including deficiencies in medical care. *See generally Jones*, 296 F.R.D. 416. A Monitor was appointed "to oversee implementation" of the Consent Judgment.[26] The Monitor is required to "file with the Court and provide the Parties with reports describing the steps taken by [the Sheriff] to implement [the Consent Judgment] and evaluate the extent to which [the Sheriff] has complied with each substantive provision of the [Consent Judgment]."[27]

As with the DOJ letters, plaintiffs have failed to explain how the Monitor's reports could be

---

has been underway, defendant has failed to respond in any way to the settlement proposal broached at the previous settlement conference on April 30, 2015.").
[24] R. Doc. No. 25-1, at 19-20.
[25] R. Doc. No. 25-2, at 16-17.
[26] *Jones v. Gusman*, No. 12-859, R. Doc. No. 466, at 44.
[27] *Jones*, R. Doc. No. 466, at 46.

admitted at trial for the truth of various incidents of deficient medical care related therein or how they would present competent evidence or testimony of those incidents. In addition, the Consent Judgment itself dictates that these reports are not admissible against the Sheriff in this proceeding.[28] Accordingly, the Court concludes that the Monitor's reports are not admissible evidence and cannot be used to oppose the Sheriff's motion for partial summary judgment. *See Bellard*, 675 F.3d at 460.

In short, plaintiffs have not produced evidence raising a genuine issue of material fact regarding a pattern or policy of similar constitutional violations at OPP, which they concede is part of their burden with respect to their § 1983 claims. The Court is therefore constrained to grant the Sheriff's motion for partial summary judgment.

## CONCLUSION

A few closing comments are warranted. The Court is well aware of the history of deficient medical and mental health care at OPP, as well as the continued persistence of issues related to such deficiencies. Those conditions amply warranted entry of a Consent Judgment to reform conditions at OPP. But plaintiffs seek monetary damages for a single incident at OPP. To prove their case, plaintiffs rely only on the reputation of OPP[29] and documents widely available to the public. If

---

[28] *Jones*, R. Doc. No. 466, at 46 ("Reports issued by the Monitor shall not be admissible against Defendant in any proceeding other than a proceeding related to the enforcement of this Agreement initiated and handled exclusively by Defendant, [Southern Poverty Law Center], or DOJ.").The reports are prepared for the benefit of the Court and the parties to the Consent Judgment, not for the purposes of unrelated litigation, and would not exist absent the Consent Judgment. The Court is deeply concerned that use of the Monitor's reports in adversarial litigation would impede the Monitor's ability to gather accurate information and report to the Court regarding implementation of the Consent Judgment. Certainly, plaintiffs in this case were not parties to the Consent Judgment and did not agree to the inadmissibility of the Monitor's reports, but neither have they articulated any basis for admissibility of the reports.

[29] Although plaintiffs do not make this argument, the Court notes that the Consent Judgment has no collateral estoppel effects against the Sheriff in this case. *See Walker v. Gusman*, No. 12-2521, 2015 WL 2354071, at *6-7 (E.D. La. May 15, 2015) (Lemmon, J.)

plaintiffs' generic evidentiary showing sufficed to defeat the Sheriff's motion for partial summary judgment, it would suffice for any plaintiff pursuing monetary damages from the Sheriff in his official and individual capacities for any medically-related § 1983 claim. Such a universal finding would be tantamount to a conclusion by this Court that the Sheriff could be held vicariously liable for any injuries at OPP allegedly caused by deficient medical care, a conclusion foreclosed by cases interpreting 42 U.S.C. § 1983. *See McCully*, 406 F.3d at 381; *Piotrowski*, 237 F.3d at 578. Mr. Lee's death is tragic, but having reviewed the record presented by plaintiffs to this Court, the law dictates that the Sheriff's motion must be granted. Accordingly,

**IT IS ORDERED** that the Sheriff's motion for partial summary judgment is **GRANTED** and that all of plaintiffs' claims arising under federal law are **DISMISSED WITH PREJUDICE**. Plaintiffs' claims arising under state law are not affected by this order and the Court will decide at a later date whether to exercise supplemental jurisdiction over the remaining state-law claims.

New Orleans, Louisiana, July 23, 2015.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**